UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

SHERI ELLEN HAMNIK,

        Plaintiff,

v.                                                        2:11cv454

SENTARA MEDICAL GROUP,

        Defendant.

## REPORT AND RECOMMENDATION

This matter comes before the Court on Sentara Medical Group's ("Defendant" or "Sentara") Partial Motion to Dismiss filed September 15, 2011. (ECF No. 4). Plaintiff, Sheri Ellen Hamnik ("Plaintiff" or "Dr. Hamnik") initiated this claim on August 15, 2011 alleging: (I) Discrimination based on gender; (II) Retaliation in violation of 42 U.S.C. § 2000, Title VII; (III) Breach of contract; and (IV) Wrongful termination in violation of public policy. (Compl., ECF No. 1). Sentara moved to dismiss Count IV. (ECF No. 4). On October 5, 2011, Sentara's motion was referred to the undersigned for a report and recommendation under 28 U.S.C. § 636(b)(1)(B) and Federal Rule of Civil Procedure 72(b). (ECF No. 12). For the reasons set forth below, the undersigned recommends the Court GRANT Defendant's Motion and dismiss Count IV.

### A.    Factual and Procedural History

Dr. Hamnik began employment with Sentara as part of the department of Neurology Specialists in January 2009. (ECF No. 1 at 2). While working for Sentara, Dr. Hamnik alleges she was subject to repeated mistreatment by her colleagues and superiors. Id. at 3. As relevant here, she

also asserts in Count IV of her complaint that she reported numerous instances of colleagues' misdiagnoses and mistreatment of patients to Sentara's risk management office and to her supervisor. She claims her eventual termination was retaliation for these reports of mistreatment, and as a result violated public policy of the Commonwealth. Id. at 6.

Dr. Hamnik alleges that she first reported her concerns of misdiagnoses and mistreatment to Sentara's risk management office, but was immediately rebuked by her supervisor, Dr. Richard Zweifler, ("Dr. Zweifler"). She claims Dr. Zweifler, head of Sentara's Neurology Specialist's department, told her never to report such matters again.[1] Id. at 6. She also alleges that over the course of her employment, she related concerns regarding her colleagues' billing habits, misdiagnosis and potential malpractice to Dr. Zweifler. Id. At each instance, Dr. Hamnik says that she was encouraged to keep quiet. Id. Dr. Hamnik claims that as a result of these mistakes, some patients suffered grave harm including permanent paralysis, brain injury and death. Id. Dr. Hamnik claims that Sentara responded to her reports by wrongfully suspending and eventually firing her. Id. at 7. Dr. Hamnik has not alleged that she reported her concerns to the Department of Health or any government regulator.

Dr. Hamnik initiated this lawsuit on August 15, 2011. (Compl., ECF No. 1). Sentara filed its present partial Motion to Dismiss and Memorandum in Support on September 15, 2011. (ECF No. 4). Plaintiff filed her opposition on September 27, 2011 (ECF No. 10) to which Defendant replied. (ECF No. 11). Accordingly, the matter is ripe for judicial review.

---

[1] The Court accepts as true the factual claims in Dr. Hamnik's Complaint solely for the purpose of this motion. Sentara, however, denies them. (Answer, ECF No. 6 at 5).

2

B. <u>**Standard of Review**</u>

"A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A pleading fails to meet this standard and is subject to dismissal under Rule 12(b)(6) when it does not "contain sufficient factual matter, accepted as true, 'to state a claim that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009) (quoting <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)). A claim has facial plausibility when the plaintiff pleads factual content "that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Iqbal</u>, 129 S.Ct. at 1949.

"Factual allegations must be enough to raise a right to relief above the speculative level" and beyond the level that is merely conceivable. <u>Twombly</u>, 550 U.S. at 570; <u>Iqbal</u>, 129 S. Ct. at 1951. Legal conclusions and "threadbare recitals of the elements of a cause of action" do not state a claim. <u>Iqbal</u>, 129 S.Ct. at 1049.

The Supreme Court has described the motion to dismiss analysis in two parts. First, the Court must accept the allegations of fact as true. <u>Id</u>. at 1949-50. However, a court is not required "to accept as true a legal conclusion couched as a factual allegation," <u>Papasan v. Allain</u>, 478 U.S. 265, 286 (1986), or a legal conclusion unsupported by factual allegations, <u>Iqbal</u>, 129 S. Ct. at 1951. After reviewing the allegations, the Court must consider whether they are sufficient to state a plausible claim for relief – "a context specific task that requires the reviewing court to draw on its judicial experience and common sense." <u>Iqbal</u>, 129 S.Ct. at 1950.

C. **Analysis**

Virginia has long been recognized as an "employment at will" state. See Lawrence Chrysler Plymouth Corp. v. Brooks, 251 Va. 94, 465 S.E.2d 806 (1996); Miller v. SEVAMP Inc., 234 Va. 462, 362 S.E.2d 915 (1987). Thus, under Virginia law, general claims of wrongful termination state no claim for relief. Id. However, in Bowman v. State Bank of Keysville, the Supreme Court of Virginia established a narrow exception to this rule when the discharge violates some public policy of the Commonwealth. 229 Va. 534, 331 S.E.2d 797 (1985). The Court has since recognized three types of public policy exceptions, permitting a common law claim of wrongful discharge, when:

1. An employer violated a policy enabling the exercise of an employee's statutorily created right; Bowman, 229 Va. at 540, 331 S.E.2d at 801.

2. A public policy violated by the employer is explicitly expressed in a statute, and the employee was clearly a member of that class of persons directly entitled to the protection enunciated by the public policy; Bailey v. Scott-Gallaher, Inc., 253 Va. 121, 480 S.E. 2d 502 (1997).

3. The discharge was based on the employee's refusal to engage in a criminal act. Mitchem v. Counts, 259 Va. 179, 523 S.E.2d 246 (2000).

See Rowan Tractor Supply Co., 263 Va. 209, 559 S.E.2d 709, 713-14 (2002)(enumerating Bowman claims).

The Supreme Court has emphasized that the Bowman exception is narrow, and that "[t]ermination of an employee in violation of the policy underlying any one statute does not automatically give rise to a common law cause of action for wrongful discharge." Rowan, 263 Va. at

4

213, 559 S.E. 2d at 713 (citing <u>City of Virginia Beach v. Harris</u>, 259 Va. 220, 232, 523 S.E. 2d 239, 245 (2000)). The Court has expressly refused to recognize a general common-law "whistleblower" retaliatory discharge claim. <u>Dray v. New Market Poultry Products, Inc.</u>, 158 Va. 187, 191, 518 S.E.2d 312, 113 (1999) (citing <u>Lawrence Chrysler Plymouth Corp. v. Brooks</u>, 251 Va. 94, 465 S.E.2d 806 (1996); <u>Miller v. SEVAMP Inc.</u>, 234 Va. 462, 362 S.E.2d 915 (1987)).

In this case, Plaintiff alleges that her firing falls under the <u>Bowman</u> exception because she was fired in violation of Virginia Code §32.1-125.4. This statute expressly prohibits retaliation by hospitals against those who cooperate with government regulatory agencies. It states:

> No hospital may retaliate or discriminate in any manner against any person who (i) in good faith complains or provides information to, or otherwise cooperates with, the Department [of Health] or any other agency of government or any person or entity operating under contract with an agency of government having responsibility for protecting the rights of patients of hospitals, or (ii) attempts to assert any right protected by state or federal law.

Neither party suggests that Dr. Hamnik complained to the Department of Health or any other government agency. Rather, to invoke the statute, Plaintiff has alleged that she complained to Sentara itself (her supervisor and risk management). Recognizing that the class of persons protected by the statute are those who cooperate with government investigators, Dr. Hamnik also alleges that "[u]pon information or belief, [Sentara] is operating under contract with an agency of government having responsibility for protecting the rights of patients of hospitals." (Compl., ECF No. 1 at 11).

In its Partial Motion to Dismiss Sentara argues that Plaintiff's bald statement that Sentara was operating under a contract with a government agency is conclusory, and asserts a legal conclusion

that Sentara "is therefore subject to Virginia Code §32.1-125.4."[2] (Def. Reply, ECF No. 11 at 2). It argues that Plaintiff's complaint merely recites the elements of a claim, unsupported by facts and therefore fails to state a plausible claim for relief. Iqbal, 129 S.Ct. at 1950. Sentara asserts, to proceed with Count IV, "[p]laintiff must identify the contract, identify the agency of government with which Sentara made this alleged contract, and identify the legal basis on which this unnamed agency has the responsibility to protect the rights of patients of hospitals." (Def. Reply, ECF No. 11 at 2).

Dr. Hamnik argues that her allegation of a contract between Sentara and the government is not a legal conclusion. (Pl.'s Mem. Opp., ECF No. 10 at 3). She describes it as a "factual conclusion" which must be accepted as true and is therefore sufficient to state a claim for wrongful discharge under the statute. Id. at 4. While neither parties' position is precisely correct, after reviewing the Complaint, the statute, and the foregoing authority the undersigned concludes that Dr. Hamnik has not plausibly alleged a claim for wrongful discharge under this Virginia statute.

There have been no cases interpreting Virginia Code §32.1-125.4. As written, however, the statute's purpose is plainly to protect hospital employees who complain to <u>third parties</u> (i.e. regulators) responsible for protecting the rights of patients of hospitals. Because Dr. Hamnik has not

---

[2] Sentara also argues that Plaintiff has not established a "Type 1" or "Type 3" Bowman claim. That is to say, Sentara argues that the Virginia statute creates neither a statutory "right" or "duty" for Dr. Hamnik to report such concerns to Sentara, and that Dr. Hamnik's discharge was not based on a failure to engage in a criminal act. Neither party argues that Dr. Hamnik refused to engage in criminal act. With respect to a "Type 1" claim, although Plaintiff's complaint alleges a right and duty conferred by the Virginia statute, her reply does not address this argument. Instead, she relies exclusively Bowman's second exception- that the public policy expressed in Virginia Code §32.1-125.4, applies to the case. Because the undersigned finds that the Virginia statute does not apply to the internal reporting alleged in this case, it follows that the same Virginia statute creates no "right" or "duty" to report misconduct internally.

alleged that she reported her concerns to the Department of Health or to another government agency, she attempts to use the language in the third clause of the statute to invoke its protection. This clause bars retaliation against employees who complain, provide information to, or cooperate with "...any person or entity <u>operating under contract with an agency of government</u> having responsibility for protecting the rights of patients of hospitals...." Va. Code § 32.1-125.4 (emphasis added).

Read in context, the term "operating under contract" in the statute requires that, to be protected, the reporting must be connected in some way with government regulators having responsibility for protecting patients' rights. The base verb "to operate" means "to perform a work or labor." <u>Webster's Seventh New Collegiate Dictionary</u>, 591 (G.C. Merriam Co. 1965). The statute's use of the word "operating" thus requires more than an unrelated contractual connection between the entity receiving the report and government healthcare regulators. To state a claim for retaliation under the statute, Dr. Hamnik's allegations must show that she reported to or cooperated with someone performing work or "operating under" a contract with government regulators.

Other than her verbatim recitation of the statutory language, no allegation in Dr. Hamnik's Complaint suggests that Sentara, or Dr. Hamnik's supervisors were "operating under a contract" with government regulators at the time she made her complaints. As a result, her allegation that "upon information or belief" they were so operating is conclusory, and not entitled to the presumption of truth. See <u>Twombly</u>, 550 U.S. at 551, <u>Iqbal</u>, 129, S.Ct. at 1951. The Court must therefore examine the other factual allegations to determine whether they are sufficient to show that Dr. Hamnik's claim under the statute is plausible.

Those allegations establish that Dr. Hamnik was a medical doctor, employed by a hospital. (Compl. ECF No. 1, ¶ 60). To this extent, she is likely within the class of persons intended to be protected by the statute. However, the reporting she describes was to her supervisors and not to a third party. Specifically, Dr. Hamnik alleges that she reported concerns to Sentara's risk management office and her supervisor, Dr. Zweifler. (Compl. ECF No. 1 at ¶¶ 30 – 31). She also alleges that rather than address her concerns, Dr. Zweifler rebuked her and directed her to "keep quiet" and "never report such matters again." Id. Accepting these factual allegations as true undermines, rather than supports Dr. Hamnik's claim that her reporting was to an entity "operating under a contract" with government regulators having responsibility for protecting patients' rights. Had the entity been performing work under a contract with an agency of government charged with protecting patients, it is more likely that her complaints would have been investigated rather than rejected and ignored, as she affirmatively alleges.

Determining whether factual claims are sufficient to survive a motion to dismiss is a "context specific task." Where "the well-pleaded facts do not permit the court to infer more that the mere possibility of misconduct, the complaint has alleged — but it has not 'show[n]'—'that the pleader is entitled to relief.'" Iqbal, 129 S.Ct. at 1950. Read as a whole, this Virginia statute protects the class of individuals who complain to third party regulators responsible for investigating and ensuring the competency of hospitals. Dr. Hamnik has not plausibly alleged she was fired for making such reports.[3] Thus, despite the alleged severity of the "misdiagnoses" of which she complains, Dr.

---

[3] Dr. Hamnik has separately pled a retaliation claim related to her complaints of gender discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000, et seq. (Compl., ECF No. 1 at 8-9). In Count IV of Dr. Hamnik's Complaint she has not attempted to assert any "state or federal right" she was exercising other than the rights allegedly conferred on her by Va. Code §32.1-125.4.

Hamnik has not stated a common law claim for wrongful discharge under Virginia law.

### D. Conclusion

Virginia is an employment-at-will state with limited wrongful discharge exceptions. The undersigned finds that the Virginia statute Dr. Hamnik relies upon does not apply to internal reporting described in her Complaint. As a result, her actions do not bring her within the class of persons the statute is intended to protect. Therefore, the undersigned recommends GRANTING Sentara's Motion and dismissing Count IV of Plaintiff's Complaint.

### REVIEW PROCEDURE

By copy of this Report and Recommendation, the parties are notified that pursuant to 28 U.S.C. § 636(b)(1)(C):

1. Any party may serve upon the other party and file with the Clerk written objections to the foregoing findings and recommendations within fourteen (14) days from the date of mailing of this Report to the objecting party, 28 U.S.C. § 636(b)(1)(C), computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.

2. A district judge shall make a de novo determination of those portions of this report or specified findings or recommendations to which objection is made.

The parties are further notified that failure to file timely objections to the findings and recommendations set forth above will result in waiver of the right to appeal from a judgment of this Court based on such findings and recommendations. Thomas v. Arn, 474 U.S. 140 (1985); Carr v.

Hutto, 737 F.2d 433 (4th Cir. 1984); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

/s/
Douglas E. Miller
United States Magistrate Judge

DOUGLAS E. MILLER
UNITED STATES MAGISTRATE JUDGE

Norfolk, Virginia

November 10, 2011

## Clerk's Mailing Certificate

      A copy of the foregoing Report and Recommendation was mailed this date to each of the following:

Todd Michael Gaynor
Taylor & Walker PC
555 E Main St
Suite 1300
Norfolk, VA 23510

Gregory William Klein
Taylor & Walker PC
555 E Main St
Suite 1300
Norfolk, VA 23510

William McCardell Furr
Willcox & Savage PC
Wells Fargo Center
440 Monticello Ave
Suite 2200
Norfolk, VA 23510

Bryan Christopher Royal Skeen
Willcox & Savage PC
Wells Fargo Center
440 Monticello Ave
Suite 2200
Norfolk, VA 23510

                                        Fernando Galindo, Clerk

                            By      _____
                                        Deputy Clerk

                                        _____, 2011